**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MR. WESLEY BEHLER, | : | |
|     Plaintiff, | : | |
| | : | No. 1:19-cv-01243 |
| v. | : | |
| | : | (Judge Kane) |
| MR. MARCEL BARBEAU, <u>et al.</u>, | : | |
|     Defendants | : | |

## **MEMORANDUM**

Presently before the Court is the second motion for summary judgment (Doc. No. 39) filed by Defendants Marcel Barbeau ("Barbeau"), Ryan Long ("Long"), and Timothy Fritz ("Fritz"). Despite being directed to do so (Doc. No. 43), <u>pro se</u> Plaintiff Wesley Behler ("Plaintiff") has not filed a response to Defendants' motion. Accordingly, because the time period for filing a response has expired, Defendants' motion for summary judgment is ripe for disposition and deemed unopposed. For the reasons that follow, the Court will grant Defendants' motion.

**I.     BACKGROUND**

Plaintiff initiated the above-captioned action on July 8, 2019, while incarcerated at the Carbon County Correctional Facility in Nesquehoning, Pennsylvania ("CCCF"), by filing a complaint against Defendants Barbeau, Long, and Fritz in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 2.) Plaintiff alleges that from March 3-5, 2019, CCCF experienced a loss of water pressure because of a frozen water main. (<u>Id.</u> at 4-6.) He maintains that this frozen water main caused CCCF to lose fresh water. (<u>Id.</u> at 5.) At 10:00 p.m. on March 3, 2019, Plaintiff refused to "lock in" to his cell for the night because of the lack of running water and because his "toilet bowl was filled with human waste, feces, and urine." (<u>Id.</u>) Plaintiff alleges that he was subsequently pepper sprayed by Defendant Barbeau and other corrections officers because of the refusal to "lock in." (<u>Id.</u>) Plaintiff was removed from his

housing unit and placed in a cell in the Restrictive Housing Unit ("RHU"). (Id.) He maintains that another inmate in the RHU cell "had been urinating, defecating, and vomiting in the toilet, in that cell, throughout the entire day." (Id.) Plaintiff alleges that he remained in the RHU cell for over forty-eight (48) hours with no water to drink or use to rinse his face and eyes after being pepper sprayed. (Id. at 5-6.) He maintains further that he was not given clean clothing and bedding. (Id. at 6.) According to Plaintiff, he had to "sustain [his] thirst with only a 4 oz. carton of milk each day." (Id.) Plaintiff was released from the RHU without being charged with any misconduct. (Id.) Based on these allegations, Plaintiff alleges that Defendants violated his Eighth Amendment rights. (Id. at 7.) As relief, he seeks damages. (Id.)

In an Order dated July 15, 2019, the Eastern District of Pennsylvania transferred the above-captioned case to this Court for further proceedings. (Doc. No. 5.) In an Order dated September 10, 2019, the Court granted Plaintiff leave to proceed in forma pauperis and directed service of his complaint upon Defendants. (Doc. No. 20.) Defendants filed an answer on November 6, 2019 (Doc. No. 25) and a motion for summary judgment on November 13, 2019 (Doc. No. 26). On January 21, 2020, observing that Defendants raised the issue of whether Plaintiff properly exhausted his administrative remedies with respect to his claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[1] (Doc. No. 33.) The Court directed Plaintiff to file a brief in opposition addressing the issue of administrative exhaustion and a statement of material facts responding to Defendants' statement within thirty

---

[1] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

(30) days. (Id.) Plaintiff filed his response on February 18, 2020 (Doc. No. 34), and Defendants filed a reply on February 27, 2020 (Doc. Nos. 35, 36).

In an Order dated April 9, 2020, the Court denied Defendants' motion for summary judgment without prejudice to their right to refile one that complied with the Court's Local Rules once discovery closed on May 6, 2020. (Doc. No. 38.) In doing so, the Court concluded that the parties' statements of fact failed to conform to Local Rule 56.1 because they did not include references to the parts of the record supporting the statements. (Id. at 3.) The Court also noted that Defendants' brief in support of their motion failed to address all issues raised by Plaintiff in his complaint. (Id.)

Defendants filed their second motion for summary judgment on May 6, 2020. (Doc. No. 39.) On May 7, 2020, observing that Defendants again raised the issue of whether Plaintiff properly exhausted his administrative remedies with respect to his claims in accordance with the PLRA, the Court issued a Paladino Order directing Plaintiff to respond to the motion within twenty-one (21) days. (Doc. No. 43.) Plaintiff, however, has neither filed a response nor a motion seeking an extension of time to do so.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

**III.  STATEMENT OF MATERIAL FACTS**[2]

Plaintiff was a pretrial detainee during the events complained of in his complaint. (Doc. No. 40 ¶ 4.) He pled guilty to possession of a controlled substance on April 8, 2019. (Id. ¶ 3.)

**A.  Facts Regarding Conditions at CCCF from March 3-5, 2019**

A frozen water main caused CCCF to lack running water "for at most 2 ½ days." (Id. ¶ 16.) Carbon County "took all reasonable steps to get the water running as soon as possible." (Id. ¶ 17.) During the outage, Defendant Fritz and his staff took various remedial actions, including: (1) melting ice from the ice machine to provide an emergency supply of water; (2) providing potable water to all inmates in Igloo coolers and not restricting inmates' water intake; (3) spending approximately $20,000.00 to have a tanker bring in water for the inmates; (4) making bottled water available; (5) keeping cell doors open so that inmates could spend more time outside their cells in the units' dayrooms; (6) continuing normal meal service with beverages; and (7) having medical staff onsite to address any health concerns. (Id. ¶ 18.) Although toilets could not be flushed and inmates could not shower during this time, "this was a minor discomfort given the exigencies of dealing with a frozen water main." (Id. ¶ 19.) "During

---

[2] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts. (Doc. No. 40.) Plaintiff failed to file a response to Defendants' statement of material facts in compliance with M.D. Pa. L.R. 56.1. Accordingly, the Court deems the facts set forth by Defendants to be undisputed. See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

the outage, all conditions at the CCCF complied with the standards set forth at 37 Pa. Code, Chapter 95, including § 95.231, which states that inmates shall bathe at least twice per week." (Id. ¶ 20.)

At approximately 10:30 p.m. on the day the water main froze, Plaintiff "and other inmates on his unit refused officers' directions to lock in their cells for the night." (Id. ¶ 21.) Plaintiff "was running around the unit, ignoring officers' orders to lock down, and even jumped off the tier, requiring the officers to use pepper spray to regain control of the unit." (Id. ¶ 22.) Plaintiff "put a towel over his face to protect himself from the spray." (Id. ¶ 23.) After officers regained control, Plaintiff was transferred to the RHU. (Id. ¶ 24.)

During the water outage, Plaintiff "had access to water that was brought into the units." (Id. ¶ 25.) "Water was brought to the cells and even inmates in disciplinary custody had access to water brought by officers and during their daily one-hour recreational time." (Id. ¶ 26.) A nurse "visited the unit daily and was available to address any concerns, if any, that [Plaintiff] had." (Id. ¶ 27.) Plaintiff "was able to clean his face, drink as much water as he wanted[,] and could have asked for medical attention if his needs were not being met." (Id. ¶ 28.) Plaintiff's cellmate in the RHU, Joseph Fritz-Rex, "made no report to the staff about vomiting or any medical issues." (Id. ¶ 29.)

### B. Facts Regarding Administrative Exhaustion

The CCCF's grievance procedure is set forth in the inmate handbook. (Id. ¶ 6.) Plaintiff received a copy of the inmate handbook when he first arrived at the CCCF. (Id. ¶ 7.) The grievance procedure allows inmates at CCCF to make complaints about: (1) conditions of their confinement; (2) complaints against officers relating to their treatment of them or about officers' misbehavior; (3) dissatisfaction with medical care; and (4) claims that officers subjected them to

harm or failed to provide a proper level of medical care. (Id. ¶ 8.) The claims that Plaintiff raises in his complaint "were claims that were covered by the CCCF grievance procedure." (Id. ¶ 9.)

The grievance procedure at CCCF "provides for several levels of review if an inmate is dissatisfied with the response he receives from his grievances." (Id. ¶ 10.) Defendant Fritz, as Warden, is "the final level of review in the grievance process and all grievances and decisions responding to grievances or grievance appeals are commemorated in writing." (Id. ¶ 11.) Plaintiff did not submit any grievances or grievance appeals "relating to any of the claims [he] makes in his complaint." (Id. ¶ 12.) Plaintiff "filed no grievances or grievance appeals against the three CCCF administrators he named as defendants or relating to their actions as [Plaintiff] described in the complaint." (Id. ¶ 13.) Plaintiff "filed no grievances or grievance appeals relating to claims against Carbon County." (Id. ¶ 14.) If Plaintiff had submitted grievances, "they would have been investigated and addressed." (Id. ¶ 15.)

### C. Facts Regarding Defendants' Involvement

Defendants are "three CCCF officials who had supervisory roles and who did not personally interact with [Plaintiff] during the events he describes." (Id. ¶ 30.) Defendant Fritz, the Warden, "was not involved with [Plaintiff] and had no knowledge of [Plaintiff's] claims until this lawsuit was filed." (Id. ¶ 31.) Defendant Long, the Deputy Warden, "was not even working during the days of the water outage and [had] no knowledge of [Plaintiff's] concerns until after water service was reinstated." (Id. ¶ 32.) Defendant Barbeau "last saw [Plaintiff] when he was transferred to the RHU and had no further contact with him nor personal knowledge about the conditions of his confinement or his complaints. (Id. ¶ 33.) Carbon County "has no record in its files of any injuries suffered by [Plaintiff] during the outage." (Id. ¶ 34.) "There was no Carbon

County policy or practice that caused [Plaintiff] to suffer a deprivation of his federal constitutional rights." (Id. ¶ 35.)

## IV. DISCUSSION

Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). Moreover, although Plaintiff was released from custody after filing the above-captioned case, he is still bound by the exhaustion requirement because he has raised claims concerning events that occurred prior to his release.[3] See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

---

[3] The Court recognizes that the Third Circuit recently concluded that the PLRA's exhaustion requirement did not apply to a situation where a plaintiff had been released from prison during the pendency of his lawsuit and, after release, filed a third and fourth amended complaint. See Garrett v. Wexford Health, 938 F.3d 69, 84 (3d Cir. 2019). The Garrett court noted that in that instance, the plaintiff's "status as a non-prisoner at the time he filed the [third amended complaint was] determinative of the Medical Defendants' administrative exhaustion defense." See id. at 87. In the instant case, however, Plaintiff is proceeding on the complaint he filed while still incarcerated. The Court concludes that Garrett is inapposite to the above-captioned case and, therefore, does not apply to excuse Plaintiff from satisfying the PLRA's exhaustion requirement.

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. See id. Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he

was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. See Harris, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. See Warman, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." See id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." See id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." See id. Finally, a procedure

11

is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." See id. at 1860. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit recently established that

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

See Hardy v. Shaikh, No. 19-1929, 2020 WL 2551046, at *7 (3d Cir. May 20, 2020).

In the instant case, Defendants argue that Plaintiff failed to properly exhaust his administrative remedies prior to filing suit. (Doc. No. 41 at 7-9.) Specifically, they maintain that Plaintiff never submitted any grievances concerning the claims he raises in his complaint. (Id. at 3.) In support of these arguments, Defendants have submitted affidavits as well as a copy of CCCF's grievance policy. (Doc. Nos. 40-1 at 1-7, 40-3 at 2, 40-4 at 4.) CCFS's grievance procedure states:

> If you feel that someone or some action that has been taken against you is unjust or unfair, you may file a grievance. A grievance includes at least one level of appeal. It is encouraged that problem solving begin at the level of most direct inmate contact. You should utilize the grievance procedure only after addressing the problem with the Correctional Officer, and reaching no satisfaction to the problem which you feel there is reason for a complaint. You should fill out an inmate request slip, and fill in the space provided with a short explanation of the problem. This completed form should be forwarded to the Sergeant.
>
> The Sergeant will try to settle the grievance at this level and provide a written response to you or forward to the Deputy Warden.
>
> The Deputy Warden will try to settle the grievance at this level and provide a written response to you or forward it to the Warden.

> The Warden will review previous responses and try to settle the grievance at this level and provide a written response to you. The Warden is the final step in the grievance procedure.

(Doc. No. 40-1 at 7.) This procedure allows inmates to raise complaints about: (1) conditions of confinement; (2) issues regarding officers' treatment of them or their behavior; (3) dissatisfactions with medical care; and (4) claims that officers "subjected [them] to harm or failed to provide [them] with a proper level of medical care." (Doc. No. 40-1 at 2.) The claims Plaintiff raises in his complaint "were claims that were covered by the CCCF grievance procedure." (Id.) Plaintiff, however, never availed himself of the grievance procedure to address the issues he now raises in his complaint. (Id. at 2-3; Doc. Nos. 40-3 at 2, 40-4 at 3.)

Plaintiff has not responded to Defendants' second motion for summary judgment. In his complaint, however, Plaintiff states that there were "no administrative procedures to provide [a] remedy for the issues raised in this complaint." (Doc. No. 2 at 4.) Plaintiff's complaint is verified and, therefore, may be treated as an affidavit in opposition to summary judgment. See Ziegler v. Eby, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985) (treating a verified complaint as an affidavit in opposition to a motion for summary judgment). This Court, however, is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." See Hammonds v. Collins, No. 12-cv-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)). Plaintiff has provided no evidence to support his assertion that there were no administrative grievance procedures available to address his claims. Moreover, Plaintiff has provided no evidence suggesting that CCCF's grievance procedure was rendered unavailable to

him under any of the circumstances set forth in Ross. See Ross, 136 S.Ct. at 1859-60. Plaintiff, therefore, has not refuted the defense that he failed to properly exhaust his claims against Defendants. Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements, the Court will grant Defendants' motion for summary judgment on the basis that Plaintiff failed to properly exhaust his administrative remedies as to his claims against them.[4]

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 39) will be granted. An appropriate Order follows.

---

[4] Given the Court's conclusion that Plaintiff did not properly exhaust his administrative remedies, the Court declines to address Defendants' alternate arguments that they are entitled to summary judgment because Plaintiff's claims lack merit and because they had no personal involvement in the alleged violations.